SHAPARD *v.* MIXON.

Opinion delivered February 28, 1916..

1. APPEALS — CROSS-APPEALS — SEPARATE CONTROVERSIES. — Plaintiffs brought an action against one M. and M. filed a cross-complaint, bringing in other parties, viz, A. and B. A decree was rendered against M. in favor of the plaintiffs and in favor of M. against A. and B. B. was granted an appeal, and the original plaintiffs cross-appealed. *Held*, plaintiff's cross-appeal was ineffective to bring up their branch of the case, under Kirby's Digest, § 1225; plaintiffs not being appellees on the appeal of B. An appeal from the portion of the decree which related to one of the controversies did not bring up the other.

2. APPEALS—TIME FOR TAKING.—Act No. 62, page 205, Acts of 1915, affecting the time for taking appeals to the Supreme Court, fixed six months after the passage of the statute as the full limit of time for appeals in all cases, and where a decree was rendered on March 18, 1915, an appeal will be held to have been taken in apt time, where it is taken, more than six months after its rendition, but within six months after the above act became effective, and within one year after the rendition of the decree.

3. LIMITATION OF ACTIONS—INFANTS—LOSS OF RIGHT.—An action by a female heir to recover the rental value of certain land is barred by limitations, where her action is commenced more than three years after she attained the age of eighteen.

4. HOMESTEAD—CONVEYANCE OF INTEREST.—A female person, over the age of eighteen and under the age of twenty-one years, has power to convey her interest in the homestead derived from a deceased parent, so long as the rights of the other children of the owner of the homestead are not interfered with.

5. HOMESTEAD—CONVEYANCE OF ONE INTEREST—ABANDONMENT.—Where the children of the deceased owner of a homestead are not actually in possession of the same, the sale of her interest, by one of the children, does not interfere with the possession of the other children, and each of the children has the right to deal separately with his or her share of the rents.

6 HOMESTEAD—CONVEYANCE OF INTEREST—RIGHTS OF OTHER CHILDREN—ABANDONMENT—LIMITATIONS.—Where certain children undertook to convey their interest in their homestead, which was then subject to a lease, and in their conveyances they recognized the existence of the lease, they will not be held to have abandoned the lease, so as to confer upon a younger child the right to recover all the rents of the premises, and this is true even though the rights of the grantors of their interests are barred by limitations from asserting any right under the lease.

7. HOMESTEAD—ESTATES HELD BY MINOR CHILD.—A minor child who inherits the homestead has two separate and distinct estates in the homestead existing at the same time and incapable of merger, namely, homestead and inheritance, one of which may be alienated and the other reserved.

8. MERGER—EQUITABLE MORTGAGE—EQUITY JURISDICTION—MORTGAGE AND LEASE—INTERVENING EQUITIES.—M. held a mortgage on certain land, but released the same upon receiving a lease for a specified time, thereto, from one B. It appearing that B. was without authority to execute the lease, and that the rights of minors arose superior to the lease, *held*, that there was a failure of consideration for the satisfaction of the mortgage, and that equity will interfere to prevent an injustice to M. raising an equitable mortgage in M.'s favor, and that the estates held by M. as mortgagee and lessee were not merged.

9. LIMITATION OF ACTIONS—EQUITABLE MORTGAGE.—The statute of limitations as to mortgages, *held* not to apply to a mortgage of the kind recited in the preceding syllabus.

Appeal from Lee Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

*Moore, Vineyard & Satterfield,* for appellant.

1.   The testimony shows that appellant paid a valuable consideration for the interests of Vessie, Inez and Birdie.   There was no testimony that he *did not* pay W. C. Bobbitt also a valuable consideration for his interest. In the absence of proof to the contrary, the quitclaim deed is sufficient to vest Shapard with all the interest and title of said W. C. Bobbitt.   44 Ark. 153; 86 *Id.* 368.

2.   The deed of trust by W. C. Bobbitt to Mixon could not affect Shapard's title.   It was void.   79 Ark. 45.

3.   Courts of equity will not relieve against mistakes of law where the rights of third parties have intervened. Bobbitt leased to Mixon in good faith to pay his indebtedness.   Subsequently he sold to Shapard in good faith and equity will not now interfere.

4.   Shapard had the right to plead the statute of limitations.   Kirby's Dig., § 5069.

*E. H. McCulloch* and *H. F. Roleson,* for R. L. Mixon.

1.   Shapard paid no consideration for Bobbitt's life estate, and he bought from the heirs with full knowledge and information that such purchase was subject to Mixon's rights.   Kirby's Dig., § 734; 51 Ark. 390.

In dealing with the heirs he recognized and took into account the Mixon lease, and so did the heirs.   Shapard should have known the provisions of § 734, Kirby's Digest.

2.   The cross-appeal was not taken within six months after the decree; it is too late.

3.   Mrs. Douglas was barred, and so was Inez.   After Inez conveyed to Shapard she no longer had any rights in the rents.

4.   The conveyances by Birdie and Inez did not have the effect of vesting in Vera, the other minor child, all the rents of the homestead.   The chancellor's finding is correct.   If the heirs desired to dispute the lease, they should have done so as soon as each became eighteen years of age.

*Daggett & Daggett,* for appellees and cross-appellants.

The right to recover the rents is undisputed unless barred by limitation or lost by abandonment. 54 Ark. 9; 56 *Id.* 139. They are not barred (92 Ark. 625), and there was no abandonment. 53 Ark. 400. The deeds to Shapard only conveyed their *estate of inheritance* in the land, and not their homestead rights. 101 Ark. 510. Under this authority, Birdie only waived her right to the rents for 1911, 1912 and 1913, and Inez only for the year 1913 by their conveyances.

2. The fact that the account of Bobbitt was for supplies and necessaries is no defense to this action, as the heirs were never legally bound for, or purchased any of them.

3. They are not estopped. 51 Ark. 61; 55 *Id.* 423. They were minors. 87 Ark. 206; 86 *Id.* 556. Minors can not waive their homestead rights. 29 Ark. 633; 37 *Id.* 316; 47 *Id.* 445.

4. Kirby's Digest, 1225, does not affect these appellees' right to appeal; they are co-appellees, and the cross-appeal is effective to confer jurisdiction as to judgment against Mixon. Besides, they prayed an appeal, and it was granted by the clerk of this court, and the appeal was taken in time. Acts 1915, p. 206.

McCULLOCH, C. J. Harriet E. Bobbitt owned a farm in Lee County, containing forty acres, which constituted her homestead, and she died in February, 1898, leaving surviving her husband, W. C. Bobbitt, and four minor children—one son, V. A. Bobbitt, and three daughters, Birdie, Inez and Vera. The land was occupied as a homestead several years thereafter by the father and the four children, but they finally removed therefrom, and the farm was occupied by tenants. In the year 1906, W. C. Bobbitt mortgaged his interest in the land to Mixon-McClintock Company, a mercantile corporation doing business at Marianna, Arkansas, the debt secured being for supplies furnished and to be furnished thereafter. The mortgage specified that it was to secure a note from W. C.

Bobbitt to the Mixon-McClintock Company for $500, and such further advances of merchandise, etc., as should thereafter be made. The mortgagee furnished supplies to Bobbitt during the years 1906, 1907, and also to some extent in the year 1908, and the account thereof fell within the terms of the mortgage. At the end of the year 1908, Bobbitt owed the Mixon-McClintock Company the sum of $531.23 balance, which was secured by the mortgage, and on January 19, 1909, he executed to R. L. Mixon, acting for the mortgagee, a contract whereby he leased the premises to Mixon for the period of five years, ending on December 31, 1913, the contract reciting on its face that the consideration was the sum of $531.23, the amount of the mortgage debt. Mixon was the agent of the mortgagee in the transaction and the lease was accepted for the latter's benefit.

The evidence in the case establishes the fact beyond dispute that the lease was executed by Bobbitt and accepted by the Mixon-McClintock Company in satisfaction of the debt due under the mortgage. The original note for $500 was surrendered to Bobbitt by the mortgagee, and the latter also gave Bobbitt an instrument stating that the live stock and wagon also embraced in the mortgage were released. There was, however, no endorsement of the satisfaction of the mortgage, made upon the record. The son, V. A. Bobbitt, joined in the lease contract. That contract contained an express covenant on the part of the lessors that they had a good and lawful right to make and enforce the contract, and that they would, "for the consideration aforesaid, and the payment of taxes as hereinbefore mentioned, warrant, defend and protect said lessee in the quiet enjoyment of the use of said land for the period of time, together with the uses, rents and profits thereof inuring to him under and by virtue of this lease." Neither Bobbitt nor his children were living on the premises at that time, but the same had been rented out for several years prior thereto. Mixon held the premises for the full period of the lease and rented it out to different parties, receiving the gross rental of $145 a year

for each year during the lease. At the time the lease contract was executed, each of the three girls, Birdie, Inez, and Vera, was under the age of eighteen years. Subsequently, three of the children, V. A. Bobbitt, Birdie Douglas (nee Bobbitt), and Inez Bobbitt, severally conveyed their interests in the land to T. L. Shapard. V. A. Bobbitt conveyed in August, 1910; Mrs. Douglas conveyed in November, 1910; and Inez Bobbitt conveyed in November, 1912. The proof shows that the conveyance of each of the children made to Shapard was in subordination to the rights of Mixon, and that a discount in the price was made on account of the outstanding lease. W. C. Bobbitt also conveyed his interest in the land to Shapard by quitclaim deed dated November 22, 1910, which was the same date as the deed of Mrs. Douglas to Shapard, and the deed recites a consideration of one dollar paid.

On January 16, 1914, the three daughters of Mrs. Bobbitt, deceased, namely, Birdie Douglas, Inez Bobbitt and Vera Bobbitt, instituted the present action against Mixon to recover of him the rental value of said premises during the period of said lease, and they alleged in their complaint that they were infants under the age of eighteen years at the time the lease was executed; that the premises constituted their homestead which they derived from their mother; and that the lease was for that reason void. Mixon answered, setting up the foregoing facts with reference to the execution of the lease and the consideration therefor, and pleaded in defense that the consideration of the original debt was supplies furnished to W. C. Bobbitt for the benefit of his minor children, and he also pleaded the statute of limitations.

A cross-complaint was filed against W. C. Bobbitt and T. L. Shapard, setting forth the fact that the conveyance from Bobbitt to Shapard was executed without valuable considerable, and that Shapard, at the time he received the conveyance, did so with full knowledge of the rights of Mixon, and there was a prayer that in the event the plaintiffs recovered anything from Mixon, that the original security be reinstated and enforced against the

estate for Bobbitt's life, held by Shapard under the deed. It was alleged in the cross-complaint that the lease from Bobbitt was accepted upon the faith that the lessee would be allowed to retain the premises for the period of the lease, and enjoy all the rents thereof, and that if the Bobbitt heirs were permitted to recover it would constitute a failure of consideration of the lease.

The suit was, without objection, transferred to equity and proceeded to a final hearing. The chancellor found that plaintiff Birdie Douglas was barred by the statute of limitations by reason of the fact that the suit was not instituted within three years after she reached the age of eighteen years; that plaintiff Inez Bobbitt was entitled to recover of Mixon her proportionate part of the rent for each year during the lease, except the year 1913, which was after she had conveyed to Shapard in recognition of the outstanding lease; and that the plaintiff Vera Bobbitt, who was still under twenty-one years of age, recover her proportionate part of the rents for each year during the lease. A decree was rendered in favor of Inez Bobbitt against Mixon for the sum of $172, and in favor of Vera Bobbitt in the sum of $228.80, which included interest at the rate of 6 per cent per annum from the expiration of each year of the lease as the rents accrued. The net rental value of the land during each year of the lease was found by the chancellor to be $106. The chancellor decided that Mixon was entitled to have the lease extended from November 28, 1917, which is the date Vera Bobbitt will come twenty-one years of age, for such length of time as the rents and profits will be sufficient to repay him the amount adjudged against him in favor of the two heirs, not extending, however, beyond the lifetime of W. C. Bobbitt.

Shapard was immediately granted an appeal to this court, and since the transcript was lodged here the original plaintiffs cross-appealed. A motion was filed by the appellees, Mixon and others, to dismiss the cross-appeal, whereupon the three plaintiffs abandoned their cross-ap-

peal and obtained a direct appeal from the clerk of this court.

(1)   The first question for discussion relates to the status here of the original plaintiffs—whether or not they have brought their case here in the proper time for review.   It is evident that the cross-appeal was not effectual for the purpose of bringing up the plaintiffs' branch of the case.   The statute provides that an appellee may at any time before trial "pray and obtain a cross-appeal against the appellant or any co-appellee."   Kirby's Digest, section 1225.   The plaintiffs are not appellees on the appeal of Shapard.   The respective controversies between plaintiffs and Mixon, and between Mixon and Shapard, are entirely separate, and an appeal from the portion of the decree which related to one of the controversies did not bring up the other.

(2)   The question whether or not the direct appeal of the plaintiffs was taken in time is a more difficult one. The final decree of the chancery court was rendered March 18, 1915, and the appeal of the plaintiffs was prayed more than six months after the rendition of the decree, but less than one year after such rendition and less than six months after the new statute shortening the time for appeals went into effect.   The statute*, it will be remembered, shortened the time for appeals from twelve months to six months after the rendition of the decree or judgment appealed from.

We held recently, in the case of *Stephens* v. *Williams*, 122 Ark. 255, that the new statute applied to judgments and decrees rendered prior to the time the statute went into effect, so as to shorten the time to six months after the statute went into effect.   The authorities cited in the opinion in that case all tend to sustain the view that the new statute does not apply to judgments rendered prior to the time it went into effect, where the unexpired period of time allowed under the old statute does not equal the full time allowed under the new.   One of the cases cited in the opinion is *Wilson* v. *Kryger*, 26 N. D. 77, 51 L. R.

*Act No. 62, page 205, Acts 1915.—(Rep.).

A. (N. S.) 760, where the court was passing upon a statute similar to the one in this case, which had reduced the time of appeal from twelve months to six months. In disposing of the matter, the court said: "In order to give effect to the evident legislative intent we are required to hold that the new act applies only to those judgments the time for appealing from which under the old statute would extend more than six months after the taking effect of the new statute. In other words, the new statute is prospective in its operation, but applies to all judgments, whether entered prior or subsequent to July 1, which, but for such act, the period in which appeals might have been prosecuted therefrom would exceed six months from such date. As to other judgments, the period for appealing is governed by the old statute, and the new does not apply, for otherwise, the new act would have the effect of enlarging rather than shortening the period for appealing therefrom, or else it would cut off all right to appeal on the date of the taking effect of such act, neither of which results was intended."

Another case which we cited with approval was *Rogers* v. *Trumbull,* 32 Wash. 211, 73 Pac. 381, dealing with a statute which shortened the time of appeals from six months to thirty days, and concerning its effect, the court said: "There is no indication in the act of 1903 that it applied to judgments rendered prior to the time the act took effect, so that judgments rendered more than thirty days prior thereto were barred of the right of appeal. It, therefore, under the rule above announced, applied only to judgments rendered subsequently, or to those where the right of appeal under the old law extended more than thirty days from the time the act took effect."

Our present conclusion finds support in the opinion in *State* v. *St. L. & S. F. Rd. Co.,* 92 Ark. 74, where the rule appears to be laid down broadly that the new statute, shortening the time for appeals and writs of error in criminal cases, has no application at all to appeals from judgments rendered prior to the passage of the statute; but, as a matter of fact, the appeal in that case was taken

within the period prescribed by the new statute, so the decision directly supports the conclusion we now reach with respect to the statute now under consideration. We think it is consistent with reason and the manifest intention of the Legislature to say, in the construction of the language of the new statute, that it was intended to fix six months after the passage of the statute as the full limit of time for appeals in all cases, but that it was not intended to restrict the time to less than six months. Under this view of the statute, the appeal of the plaintiffs was taken in apt time, and the decree of the chancery court on their branch of the case is now before us for review.

(3) The decree against Birdie Douglas, on the ground that her right of action against Mixon for the recovery of rents was barred by the statute of limitations, was correct. The action was commenced more than three years after Mrs. Douglas attained the age of eighteen years, and she was barred, either under the exemption in the seven-year statute of limitation (Kirby's Digest, section 5056), or, under the general exemption (Kirby's Digest, section 5075), in favor of infants and other persons under disabilities. *Brake* v. *Sides,* 95 Ark. 74.

The next contention is, on the part of the plaintiffs, that if they had the power at all to convey the homestead before they reached twenty-one years of age, the conveyance of the three older children to Shapard constituted an abandonment of the homestead right and gave the other child the right to recover all the rent. In other words, it is contended that the conveyance of Mrs. Douglas to Shapard, in November, 1910, gave the other two children, Inez and Vera, the right of action against Mixon for the whole of the rent for succeeding years, and that the conveyance of Inez Bobbitt to Shapard, in November, 1912, gave the youngest child, Vera, the right to recover the whole of the rent for the years 1913, which was the last year of the lease.

(4) There can be no doubt of the power of a girl over the age of eighteen, and under twenty-one, to convey her interest in the homestead derived from a deceased

parent. That point was expressly decided in the case of *Hargett* v. *Hill, Fontaine & Co.,* 101 Ark. 510. In that case we said: "The homestead is a privilege which she may relinquish or abandon after arriving at that age, so long as the rights of other children are not affected thereby. Of course, if there were other minor children, under the Constitution if she attempted to convey or relinquish her homestead right after becoming eighteen years old, she could not do so, for the rights of other children would be affected by her attempted relinquishment."

(5-6) It does not follow that a conveyance under all circumstances constitutes an abandonment so as to give the remaining minor children the exclusive right to the rent. The homestead is intended for the joint occupancy and enjoyment of all the children of the deceased homestead owner, until they become twenty-one years of age, and neither of them has the right to use the property so as to interfere with the enjoyment of it by the others. Neither has one of the children a right to force an outsider upon the others in the joint occupancy of the premises. For instance, where all the children are enjoying the occupancy of a home, one of them can not force into the family circle a stranger by a conveyance of the homestead right. But the Constitution expressly provides that the minor children shall enjoy the use of the premises, whether they remain in possession or not, and where they are not actually in possession, a conveyance of the separate interest in the fee to the homestead would not necessarily amount to an abandonment of the right to enjoy the premises so far as concerns the other children. That is particularly true in a case like this, where the children are not in actual occupancy of the homestead or using it as a home, but where it is leased out and only the payment of rent is demanded. In such a case the sale of the homestead by one of the children does not interfere with the possession of the other children, and each of the children has the right to deal separately with his or her share of the rents. Here the children who sold to Shapard did so

in express recognition of Mixon's rights under the lease, and there was evidently no intention to abandon the lease so as to confer upon the younger child the right to recover all the rents of the premises. If the older children saw fit to recognize the validity of the lease to Mixon, that fact did not enlarge the rights of the youngest child so as to give her a right of action against Mixon for the whole of the rent; nor does the fact that the former are barred by limitations from maintaining a suit against Mixon confer any greater rights on the youngest child. *Stubbs* v. *Pitts*, 84 Ark. 160.

(7)　Cases may be cited where it has been held that an attempt of the widow to alienate her interest in the homestead operates as an abandonment, but those cases do not present an analogous question to that involved concerning the effect of a conveyance by one of the children. A minor child who inherits the homestead has "two separate and distinct estates in the homestead existing at the same time and incapable of merger, namely homestead and inheritance." *Kessinger* v. *Wilson*, 53 Ark. 400. Having thus two separate and distinct estates, one may be alienated and at the same time the other reserved, unlike the conveyance of a widow, who has only one interest which is inalienable. The conveyance by the minors, therefore, of their fee, in recognition of the rights of Mixon, constituted a ratification of the lease, and not an abandonment, and it did not confer upon the other chil- the right to recover all the rents. *Stubbs* v. *Pitts, supra.*

We are of the opinion, therefore, that the chancellor did not err in refusing to render a decree in favor of Inez and Vera Bobbitt for the full amount of the rental value of the premises after the conveyance made by their sister, nor in refusing to decree in favor of Vera for the full amount after the date of the conveyance by Inez.

It is also urged that the conclusion of the chancellor was contrary to the evidence as to the amount of the rental value, but when we consider that the plaintiffs repudiated the lease, and are entitled to recover, not the amount Mixon agreed to pay, not what he received, but only the

net rental value of the premises, we can not say that the chancellor erred in reaching the conclusion he did as to the amount, so the decree as to each of the plaintiffs is affirmed.

(8)    This brings us to the discussion of the controversy between Shapard and Mixon.    In the complaint there was a prayer for a foreclosure of the mortgage, but the relief granted was an extension of the original lease so as to make it begin on the date of the expiration of the homestead right of the youngest child.    That feature of the decree is defended on the ground that the lessor, W. C. Bobbitt, had no right to execute the lease at the time, but, that his right to do so will be complete when the youngest child becomes of age, and that Mixon's right to hold under the lease will inure to him at that time, pursuant to a statute which provides as follows: "If any person shall convey any real estate by deed, purporting to convey the same in fee simple absolute, or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterward acquire the same, the legal or equitable estate afterward acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance." Kirby's Digest, section 734.

The difficulty of applying this statute in the way attempted in the decree is that the effect of the decree was not to confer an estate acquired subsequent to the execution of the deed of conveyance, but was to make a new contract of lease for the parties.    The parties themselves contracted for a term of lease extending from one definite date to another, and for the court to attempt to fix another time would be to make an entirely new contract for the parties, and not merely to carry out the old contract. We are of the opinion that the decree in that respect was erroneous, but if it be found that appellees were entitled to a foreclosure of the original mortgage on the estate for the life of Bobbitt, then there is no error committed in extending the lease, for the effect of the decree was to

give the appellees less than what was asked. The decree was, in other words, in Shapard's favor to that extent, and he does not complain, but insists that appellees are not entitled to any relief at all against him. That is the real inquiry involved in this branch of the case.

Now, the testimony is undisputed that Shapard purchased this interest, as well as the interests of the plaintiffs, with full knowledge of Mixon's rights under the lease and in distinct recognition thereof. The testimony does not show that he was a purchaser for value from Bobbitt, for his deed is a quitclaim and recites a consideration of one dollar, and there is no other proof in the record tending to show that he paid anything. He was not only not a purchaser for value, but he was actually put upon notice as to all of the rights of the appellees in this case. He stands merely in Bobbitt's shoes, and if the appellees are entitled, as against Bobbitt, to have their rights re-established and enforced under the original mortgage, then Shapard's purchase does not prevent the enforcement of those rights. The parties intended by the execution and acceptance of the lease to extinguish the mortgage debt, but the consideration failed to the extent that the children are permitted to recover the rents for the years covered by the contract. The partial failure of consideration for the execution of the contract is the same as a total failure, so far as affects the rights of the injured party to relief. *Webster* v. *Carter,* 99 Ark. 458.

Bobbitt is insolvent; and unless appellees have a remedy under the original mortgage lien, then there is no remedy for them at all. Will a court of equity provide a remedy? In the case of *Driver* v. *Jenkins,* 30 Ark. 120, this court said: "Here there is a right without an adequate remedy at law. It is a maxim in equity that equity will not suffer a right to be without a remedy. This maxim is the foundation of equitable jurisdiction; because that jurisdiction had its rise in the inability of the common law courts to meet the requirements of justice."

The effect of the acceptance by Mixon of the lease, if it served as an extinguishment of the mortgage lien, was to merge the equitable estate of the mortgagee into the legal estate for the time being under the lease. If there was no merger then there was no extinguishment of the original lien. The principles involved in the disposition of this branch of the case are not new. Mr. Jones, in his work on mortgages, volume II, section 873, said: "Where a conveyance of mortgaged premises is made to the mortgagee in satisfaction of the mortgage debt, he taking the same in ignorance of a subsequent judgment lien thereon and canceling the mortgage of record, equity will not treat the conveyance as a merger of the mortgage lien in the absolute estate but will revive such lien as against a purchaser on execution sale. It may, therefore, be deduced from the authorities as a general rule that, when the mortgagee acquires the equity of redemption in whatever way, and whatever he does with his mortgage, he will be regarded as holding the legal and equitable titles separately, if his interest requires this severance. The law presumes the intention to be in accordance with his real interest, whatever he may at the time have seemed to intend." Many cases are cited in support of the text.

In *Stantons* v. *Thompson,* 49 N. H. 272, the court (quoting from the syllabus) held: "Where, by a release of the right of redemption, the two estates are united in the mortgage, the mortgage will be upheld as a subsisting source of title, whenever it is required by the justice of the case, or the intention of the parties."

In *Woodhurst* v. *Cramer,* 29 Wash. 40, it was held: "Where a conveyance of mortgaged premises was made to the mortgagee in satisfaction of the mortgage debt, who took same in ignorance of a subsequent judgment lien thereon and cancelled the mortgage of record, equity will not treat the conveyance as a merger of the mortgage lien in the absolute estate, but will revive such lien as against a purchaser on execution sale."

The following cases are precisely in point on that question: *Lyon* v. *McIlvaine,* 24 Ia. 9; *Snyder* v. *Snyder,*

6 Mich. 470; *Lowman* v. *Lowman*, 118 Ill. 582; *Mallory*
v. *Hitchcock*, 29 Conn. 127.

The subject has been treated in decisions of this court
and we have reached the same conclusion concerning the
doctrine of merger. The rule laid down by this court is
that "the doctrine of merger never applies where there
are any equities which will be thereby defeated." *Bemis*
v. *First National Bank*, 63 Ark. 625; *Neff* v. *Elder*, 84
Ark. 277; *Beauchamp* v. *Bertig*, 90 Ark. 351.

The application of the principle is not averted by
the fact that there was no intervening incumbrance be-
tween the execution of the mortgage and the execution
and delivery of the lease. Its application to this case
rests upon the fact that Bobbitt obtained a satisfaction
of the mortgage by granting a lease which the lessee was
unable to enjoy because of the fact that the lessor had
no right to execute it, and there was therefore a failure
of the consideration for the satisfaction of the mortgage.
The facts present a proper case, we think, for the inter-
position of a court of equity in order to prevent an in-
justice. Bobbitt is in no position to complain because
his own warranty of title was broken and the considera-
tion for the valuable things he received, *i. e.* the satisfac-
tion of his mortgage debt, failed. We have already
shown that Shapard is in no better condition, because he
paid nothing more than a nominal consideration for the
conveyance he obtained from Bobbitt, and he was in pos-
session of full information concerning the rights of the
appellees.

(9) But it is contended on behalf of Shapard that
the remedy of appellees under the original mortgage is
barred by limitations under the statute which provides
that in suits to foreclose mortgages "it shall be sufficient
defense that they have not been brought within the period
of limitation prescribed by law for a suit on the debt or
liability for the security of which they were given." Kir-
by's Digest, section 5399. The revival of the original
mortgage lien makes it a creature of equity, and such
liens are not subject to the terms of the statute concerning

registration of mortgages and the period of limitations for the enforcement of mortgages. *Martin* v. *Schichtl*, 60 Ark. 595; *Ft. Smith Milling Co.* v. *Mikles*, 61 Ark. 123; *Sturdivant* v. *McCorley*, 83 Ark. 278; *Neff* v. *Elder, supra*; *Weaver-Dowdy Co* v. *Martin*, 94 Ark. 503.

In *Sturdivant* v. *McCorley, supra*, Judge Riddick, speaking for the court, said: "The statute of limitations as to mortgages does not apply to equitable mortgages of this kind evidenced by absolute deeds without any written defeasance."

In *Neff* v. *Elder, supra*, we held (quoting from the syllabus) that: "A purchaser of a defective title to land who was entitled to subrogation by reason of having discharged a valid mortgage lien which was not barred at the time of such discharge may bring his action to enforce his right to subrogation within a reasonable time after discovery of the defect in his title."

We held that the statute of limitations with respect to the time within which foreclosure suits might be brought had no application to a suit of that kind.

The remedy was therefore not barred, and there being no prejudicial error in the decree against Shapard the same is affirmed.

Hart and Kirby, JJ., dissent.

McCulloch, C. J., (on rehearing). It is insisted by counsel for the plaintiffs that we reached an erroneous conclusion with respect to the amount of rents for which Mixon is liable to them. They contend that according to the undisputed evidence Mixon received annually the sum of $145 as rent of the lands and that he is liable to the plaintiffs on that basis. The chancellor found the rental value to be the sum of $106. The complaint contains no allegation as to the rental value of the lands and there was no proof directed to that issue. It is merely alleged in the complaint that Mixon received $145 each year, and that allegation is sustained by the evidence. The only testimony on that subject comes from Mixon himself. He testified that he accepted the lease in satisfaction of the Mixon-McClintock Company debt of $531.23 and that he

sub-rented the land each year for the gross sum of $145. He also testified that he paid for certain repairs and paid the taxes on the land, but did not state the cost and amount thereof and was not asked to do so.

The plaintiffs repudiated the lease made by their father and can not treat Mixon as a mortgagee in possession, but are confined in their recovery to the fair rental value of the lands. That is not necessarily determined by ascertaining the gross amount of rents received, but the amount so received affords some evidence of the rental value of the land, though not conclusive. The burden being on the plaintiffs, they should have offered proof of the net rents received, after deducting taxes and the reasonable cost of necessary repairs, or of the rental value regardless of the amounts actually received. They are not entitled to recover the full rental price received in face of the positive testimony that it was necessary to expend sums for repairs and taxes. Mixon testified that he agreed to pay $531.23 by way of credit on the mortgage debt and to pay the taxes and repair bills, and the chancellor accepted that as the best evidence brought before him of the true rental value of the land. We can not say that his conclusion was unwarranted. So the plaintiffs' petition for rehearing is overruled.

Shapard asks for a rehearing on each of the points decided against him, but he offers no reasons except those urged in the original briefs, and as we are satisfied with the conclusions reached the petition is overruled.

He asks, also, that the judgment of affirmance be modified so as to remand the cause with directions to enter a decree foreclosing the Mixon-McClintock Company mortgage on the estate of the life of W. C. Bobbitt for the amount decreed against Mixon in favor of the plaintiffs. Appellees join in that request, and for that reason the modification will be made. It is so ordered.