PORTER *v.* MORRIS.

## Opinion delivered November 26, 1917.

1. PROMOTERS—SALE OF STOCK—DUTY TO REVEAL TRUE FACTS.—Where the promoters of a corporation, capitalized at $1,000,000, issued stock to themselves for $600,000, the sole consideration for which was a tract of land valued at $925, it is their duty to reveal the true facts to a prospective purchaser of stock.

2. CORPORATIONS—SALE OF STOCK—FRAUD.—The sale of stock in a water power company, held induced by fraudulent representations.

3. APPEAL AND ERROR—EQUITY—RELIEF NOT SOUGHT BELOW.—In an appeal in an action in equity, appellee can not obtain on a cross-appeal relief not sought before the chancellor.

4. APPEAL AND ERROR—CROSS-APPEAL, TIME.—A cross-appeal can not be treated as an original appeal, when taken over six months after the rendition of the decree.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Carmichael, Brooks & Rector,* for appellants.

1. No fraud nor misrepresentations were proven in the sale of the stock to Morris. 47 Ark. 165; 125 U. S. 247-250 L. Ed.; 31 *Id.* 678; 20 *Id.* 627; 150 U. S. 665, 673; 5 Pet. 264; 1 Wheat 175; 111 U. S. 549; 37 L. R. A. 605; 80 Am. Dec. 172; 160 S. Ct. Rep. 582; 91 Ark. 324.

2. The stock was fully paid and non-assessable as to Morris. 56 Ark. Law Rep. 229, 236; 10 Cyc. 701-2; 134 S. W. 1066; 95 Ark. 124; 4 Thompson on Corp., § 3431; 45 L. R. A. 647.

*John W. Wade,* for appellee.

1. The stock was sold appellee by false and fraudulent representations. 1 Cook on Corp. 410-11-12 and note 7, 419, 2397; 10 Cyc. 428; 33 L. R. A. (N. S.) 721, note.

2. The corporate statute was fraudulent. Kirby's Digest, § § 838-9, 845; 139 U. S. 417; 71 Ark. 383; 135 Fed. 159; 36 Tex. Civ. App. 317; 127 Ala. 513; 51 W. Va. 341; 90 Va. 533; 1 Cook. Corp., par. 325, 342, note 1 (1867).

3. Appellee's transferers were his fiduciaries. 71 Ark. 277; 18 A. & E. Ann. Cas. 354.

4. Appellee was made to believe he was getting treasury stock and that the price would go into the treasury. There was failure of consideration. The concern was a failure and the whole scheme a fraud. On the cross-appeal appellee should be awarded the stock at least.

McCULLOCH, C. J. Appellee Morris purchased shares of stock in a domestic corporation known as the Pike County Water Power Company, and executed his notes for the amount to be paid for the stock. The present litigation involves two actions, one instituted against appellee to recover the amount of two unpaid notes, and the other an action instituted in the chancery court of Pulaski County by appellee against certain parties to cancel the purchase of the shares of stock and the unpaid notes executed by appellee for the price. The two actions were consolidated and proceeded to a final decree in the chancery court of Pulaski County.

The domicile of said corporation was at Murfreesboro, Arkansas, with offices in the city of Little Rock. The parties who became interested in the organization of the corporation, Cox, Showers, Jones, Holman and Bain, conceived the plan of purchasing a tract of land, containing 185 acres, near Murfreesboro, on which was located a body of water with fall sufficient to develop considerable power, and organizing a corporation to develop this power and sell the same for commercial and industrial uses. In other words, the plan was to develop and operate a hydro-electric water power plant, for the purpose of furnishing power to the cities and towns in western and central Arkansas. One of the promoters of the scheme, Bain, was interested in the tract of land, in that his wife owned an interest by inheritance from her father. Pursuant to this plan, the parties mentioned purchased the tract of land, paid therefor the sum of $925, and organized the corporation, with authorized capital stock of $1,000,000, of which $600,000 was issued to the promoters mentioned above and two other gentlemen, who are practicing attorneys, and who received each a large

block of stock for his services as attorney. The capital stock was divided into shares of the par value of $5 per share. None of these parties paid into the treasury of the corporation any money in consideration of the issuance of the stock, but the testimony is to the effect that some of them expended sums of money in procuring the services of an engineer and in paying the expenses of issuing and distributing the printed prospectus. Four of the parties named, Showers, Cox, Jones and Holman, sold to appellee 4,000 shares of their stock, of the par value of $20,000, for the amount of one-third of the par value of the stock, and appellee executed his four promissory notes, each for the sum of $1,666.66. Instead of transferring the stock to appellee, they surrendered the shares of stock to the corporation, and caused the secretary to issue 4,000 new shares of stock direct to appellee. Said promissory notes were executed by appellee to his own order and endorsed in blank, and were delivered to the four parties just named, who each took one of the notes. Cox and Showers each assigned the respective notes held by them to local banks, and appellee subsequently paid the same after the institution of the present litigation.

The notes to Jones and Holman were not paid at maturity, and appellee executed new notes in renewal, payable directly to Jones and Holman, respectively, and they transferred the notes to the Jones House Furnishing Company, a corporation with which they were connected as directors. The Jones House Furnishing Company instituted an action against appellee in the Pulaski circuit court on the two notes after maturity; but subsequently, and while the action was pending, assigned the notes to another corporation, which became insolvent, and appellant Porter became the purchaser of the notes at a receiver's sale, and on his own petition was joined as a party to the action. Appellee then instituted the suit in equity against Showers, Cox, Jones, Holman, the Jones House Furnishing Company, and the Pike County Water Power Company, to cancel the notes and rescind

the contract of sale of the stock. These are the two suits that were consolidated and tried together.

Appellee alleged in his complaint that he was induced to purchase the stock by the false and fraudulent misrepresentations of the parties who negotiated the sale of the stock, concerning the financial status of the corporation and the prospect of developing the same into a profitable enterprise. The proof taken in the case shows that the sale was negotiated by Showers, who was employed by the other three interested stockholders to sell the stock; that Showers employed a man named Abbott to assist him in selling the stock, and that Abbott was the man who first enlisted the interest of appellee in the purchase.

The answer in the case contains a denial of the charges of fraudulent misrepresentations; and the chancellor decided that issue in favor of appellee and rescinded the sale and canceled the two unpaid notes.

We are of the opinion that the decision of the chancellor is correct. It is true the testimony does not show that any definite misrepresentations were made to appellee concerning the value of the property of the corporation; but it is sufficient to warrant the conclusion that there were misrepresentations concerning the true financial condition of the corporation and of its ability to develop into a going concern of the magnitude indicated in the prospectus and with prospects as represented to appellee. There are two points upon which appellee claims that there were misrepresentations: One that he was buying treasury stock from the corporation, and not shares of stock previously issued to other parties; and that there were sufficient funds in the treasury of the corporation for use in developing the plant and making it a profitable concern. Appellee testified that he was assured that there was plenty of money in the treasury to use in developing the plant, and that he was led to believe that the price he was to pay would go into the treasury. The printed prospectus upon which appellee relied stated that the capital stock of the corporation was

$1,000,000, "fully paid" and "non-assessable." And appellee testified that, in connection with that prospectus, he was given assurance that the money paid for the stock was in the treasury of the corporation. The undisputed fact is that appellee did not receive shares of stock owned by the corporation and that the corporation did not profit a cent by the sale of the stock to him; but, on the contrary, he unwittingly became the purchaser of shares of stock already issued to the four parties named, and they alone received the benefit of the purchase. The fact, too, that the notes executed by appellee, prepared by Showers, were made payable to appellee's own order, was calculated to conceal the true import of the transaction and disguise from appellee the fact that he was purchasing shares of stock from shareholders, rather than from the corporation itself. Nothing was ever done to develop the plant. Its property and assets consisted solely of the tract of land in question, which cost the promoters the comparatively small sum of $925, and for which the promoters received from the corporation shares of stock of the par value of $600,000. Again, appellee testified that he was assured that he was being let into the concern on an equality with the other stockholders— "on the ground floor" as he says they expressed it to him, and yet the fact remains that he paid one-third of the par value of the shares of stock, when the other stockholders received their stock at less than 2 per cent. of the par value, $925—the value of the land—being the sole consideration which they paid for the stock. These facts are not disputed, and there is no testimony in the record tending to show that the tract of land at any time had a value exceeding the amount which the promoters of the corporation paid for it. Now, the testimony does not show, as before stated, that there were any definite misrepresentations made to appellee by the promoters concerning the value of this property which constituted the only assets of the corporation; yet, in addition to the misrepresentations concerning the fact that the money brought in from the sale of stock would go into the treas-

ury, appellee was assured that he was being taken into the corporation on terms of equality with the other shareholders, and the undisputed proof is that this was not true. The fact that the promoters issued a misleading prospectus, showing that there was paid up stock of the par value of $600,000, whereas the only assets consisted of the tract of land of the value of $925, cast upon the promoters the affirmative duty of informing prospective purchasers of shares of stock of the true financial condition of the corporation. In other words, they should have informed purchasers of the fact that they had received their shares of stock in consideration of the conveyance of the tract of land; that nothing else had gone into the treasury of the corporation, and that there were no funds on hand to use in developing the plant. This view of the matter necessarily results from the application of elemental principles of equity and natural justice and good faith in ordinary business transactions. The cases cited by appellee on the brief fully sustains the decision of the chancellor upon that theory.

It is insisted that appellee waited too long and is barred by his own laches from repudiating the sale and seeking a rescission. The same testimony which establishes the misrepresentations to appellee, upon the faith of which he purchased the stock, lulled him into security and caused him to renew the two notes in suit and to fail to ask for a rescission. There has, it is true, been long delay in the determination of the rights of the parties in this transaction; but the suits were brought with reasonable promptness after the notes fell due, and appellee shows that he did not ascertain the true condition of the affairs of the corporation until after he was sued on these notes. The long delay in prosecuting the suit to final decree was caused by an agreement between the parties to wait to see whether or not some means could be found, in course of time, to develop the power plant. The evidence shows that the whole scheme has proved to be a failure and that the stock in the corporation has no sub-

stantial value. The assignee of Jones and Holman—the corporation which became the transferee of the notes from Jones and Holman, was not an innocent purchaser; nor was appellant an innocent purchaser, for he bought at receiver's sale after the maturity of the notes.

Appellee has cross-appealed, and asks, in addition to the relief granted him below, for the cancellation of the notes and the sale of the stock, that he be decreed the right to hold one-half of the stock, for the reason that he has paid the notes executed to Cox and Showers, and also that he should have a decree against Jones and Holman for the sum of $366.64 which he paid to them as interest on the notes.

The answer to the first contention on the cross-appeal is that appellee did not, as far as the abstract of the record shows, ask the chancellor to give him the relief which he now seeks with respect to the retention of half of the stock. In his deposition he expressly tendered the stock for cancellation, and the decree recites such tender. In other words, the chancellor took him at his word and allowed him to return the stock and have his notes canceled and it is too late now for him to ask, for the first time, that there be a division of the stock so that he can retain a portion of it.

Now, as to the other relief sought by the cross-appeal, it is sufficient to say that appellee should have taken an original appeal within the time prescribed by the statute, and is not entitled to a cross-appeal. The record shows that the attorney who represents appellant Porter also prayed, and obtained, from the clerk of this court an appeal for Cox, Showers, Jones and Holman, but the statement of the attorney shows that this was done by mistake and without authority. In addition to that, it may be said that the decree below was not adverse to those parties, and there was nothing for them to appeal from.

So, the matter of recovering from Jones and Holman the amount paid for interest was a separate controversy between appellee and those parties, and could not be made

the subject of a cross-appeal upon the appeal of appellant Porter.  *Shapard* v. *Mixon,* 122 Ark. 530.

We might treat the cross-appeal as an original appeal if it had been taken in time; but it was not taken within six months from the date of the decree, and, therefore, can not be considered. The cross-appeal is dismissed, and the decree of the chancery court is affirmed.