KITCHENS v. WHEELER.

4-5579                                            141 S. W. 2d 34

Opinion delivered February 19, 1940.

James H. Nobles, Jr., W. H. Kitchens, Jr., and J. R. Wilson, for appellant.

Ezra Garner, Jack Machin and Gaughan, McClellan & Gaughan, for appellee.

GRIFFIN SMITH, C. J. April 4, 1899, Ben Wheeler acquired certain lands which will hereafter be referred to as the 65-acre tract.

February 16, 1917, Wheeler (then a widower) died. He then, and had from a time antedating its acquisition, resided with his family on the land. During such time he was in possession of (and had embraced in the same enclosure with said lands) a tract of approximately 18 acres lying north of the St. Louis Southwestern Railroad right-of-way. This land will be referred to as the 18-acre tract.

Ben Wheeler was survived by four children of an earlier marriage: W. W. Wheeler, Sardenia Wheeler, Almeda Wheeler Hildreth, and Albert Wheeler. By his last marriage he was survived by eight children: Wesley Wheeler, Sebe Wheeler, Dan Wheeler, Buck Wheeler, Bertha Wheeler (now Price), Virginia Wheeler (now Holmes), Laura Wheeler (now Perry), and Adie

Wheeler, the last three being minors. Several of the Wheeler children continued to live on the land after Ben Wheeler's death. Wesley Wheeler, the last to leave, moved in 1923.

In May, 1921, a quitclaim deed to the 18-acre tract was made to J. C. Love. This deed was made after Love had acquired title from other grantors to the lands in the same 40-acre tracts that lay south of the railroad. Love undertook to have the 18-acre tract cultivated.

When Love's intentions became apparent, certain of the Wheeler heirs employed Wade Kitchens as an attorney to protect their claims. Suit was instituted to quiet and confirm title in the petitioners to the original Ben Wheeler purchase and the contiguous 18-acre tract enclosed with it. A demurrer to the complaint was sustained. Thereafter the cause was left inactive on the court's docket until 1925, when it was stricken. In the meantime Love had not attempted further cultivation of the land.

Between 1920 and 1925 Kitchens represented Buck Wheeler and Wesley Wheeler when criminal proceedings were brought against them. The attorney's fee was secured by two deeds of trust. One was executed by Buck Wheeler, Wesley Wheeler, and Mary Wheeler, the latter being Wesley's wife. The other deed of trust was given by Dan Wheeler, whose wife, Eva, did not join therein. Dan Wheeler died in February, 1925, survived by Eva, and by his brothers and sisters.

June 9, 1924, while the two trust deeds were in force, Kitchens purchased at a clerk's tax sale the 65-acre tract. Deed to the land was issued to him June 15, 1926.

In 1927 Kitchens brought suit to foreclose the trust deeds. Wesley Wheeler, Buck Wheeler, Mary Wheeler, and Dan Wheeler were made defendants. At the commissioner's sale had pursuant to foreclosure decree Kitchens became the purchaser. The deed executed to him, in form, conveyed all interest in the land. Kitchens thereupon took possession. He collected rents and paid taxes until 1936, at which time the first suit in this much-ramified litigation was instituted.

In 1927 J. C. Love executed a deed of trust in favor of Magnolia Grocer Company, covering the 18-acre tract and other lands. An indebtedness of considerable size was secured by the transaction. This deed of trust was foreclosed and Magnolia Grocer Company bought at the commissioner's sale, receiving deed dated May 22, 1930.

December 12, 1936, Adie Wheeler, Sebe Wheeler, Bertha Wheeler Price, Virgie Wheeler Holmes, and Laura Wheeler Perry instituted suit in ejectment against Wade Kitchens. They sought possession of the respective interests claimed by them in the lands Ben Wheeler had in possession at the time of his death—the 65 acres and the 18 acres. By amendment to the complaint it was sought to have description of the 18-acre tract corrected. Magnolia Grocer Company was brought in as a defendant. The ejectment suit was in Columbia circuit court.

November 7, 1937, Wesley Wheeler brought suit in Columbia chancery court against Kitchens whereby it was sought to have the foreclosure decree against him set aside because of alleged irregularities in the proceedings. Two days later, in the same court, Eva Wheeler (widow of Dan Wheeler) and the same Wheeler heirs who had instituted the circuit court action brought suit to set aside the same sale as to the widow in so far as her dower interest was concerned. As to the heirs, the relief prayed was that the sale be set aside in so far as their interests as the heirs of Dan Wheeler were concerned.

December 31, 1937, the circuit court cause, on motion of Kitchens, was transferred to equity. June 24, 1938, all causes were consolidated. All of the Ben Wheeler heirs or their successors in interest, joined in the actions or were brought into the cases. Approximately thirty pleadings were filed.

Kitchens pleaded (1) the two-year statute of limitations, (2) the five-year statute, (3) the seven-year statute, and (4) laches. As to the 18-acre tract, Magnolia Grocer Company pleaded adverse possession for seven years under color of title.

The lower court held that at the time of his death in 1917 Ben Wheeler was the owner (and in possession as his homestead) of the 65-acre tract, but had not acquired title to the 18-acre tract by adverse possession. It was the chancellor's view that Wheeler's possession, although sufficient in time, was coupled with an intention not to claim farther than the true boundary of the land he had purchased; that the Wheeler children inherited from their father, subject to the homestead rights of such as were minors; that Kitchens, as a result of his foreclosure suit, had acquired the interests of Wesley Wheeler and Buck Wheeler, amounting to a one-sixth interest plus a one-sixty-sixth interest as heirs of their brother, Dan Wheeler (this latter interest being subject to the dower rights of Dan Wheeler's widow, Eva); that the remaining Wheeler heirs, in addition to the several one-twelfth interests inherited by each from Ben Wheeler, acquired a 1/132 interest as heirs of their brother, Dan Wheeler, each interest being subject to the dower rights of Eva; that by reason of his relationship to the parties as mortgagee, Kitchens' purchase at the clerk's tax sale was a redemption for the benefit of all parties in interest, and that Magnolia Grocer Company acquired title to the 18-acre tract by adverse possession. Title accordingly was quieted in Kitchens to a 1/6 interest plus a 1/66 interest (subject to the dower rights of Eva Wheeler) in the 65-acre tract. As to the 18-acre tract, title was quieted in Magnolia Grocer Company.

The court further found that certain of the Wheeler heirs had made conveyances of their interests in the 65-acre tract. These were sustained.

Kitchens appealed. The Wheeler heirs and Magnolia Grocer Company cross appealed.

The record affords convincing proof of the diligence and skill of counsel. They have left no appropriate source of information unexplored in the search of proof to establish their respectiive contentions.

Bearing upon the age of Adie Wheeler (youngest child of Ben Wheeler) much testimony pro and con was

introduced. From the conflicting contentions the chancellor found that Adie attained his majority January 1, 1932. This finding is not contrary to a preponderance of the evidence. That date marked expiration of the homestead estate in the Ben Wheeler lands. Termination of the estate was prerequisite to a right of entry in favor of the Wheeler heirs by reason of their estates of inheritance, for the homestead estate and the estate of inheritance are incapable of merger. *Kessinger* v. *Wilson*, 53 Ark. 400, 14 S. W. 96, 22 Am. St. Rep. 220; *Shapard* v. *Mixon*, 122 Ark. 530, 184 S. W. 399; *Sheppard* v. *Zeppa, Trustee,* 199 Ark. 1, 133 S. W. 2d 860. Until there was such right of entry there was no right of action. The latter comes into being with and results from the former. *Hayden* v. *Hill,* 128 Ark. 342, 194 S. W. 19, and cases there cited.

The plea of the two-year statute of limitations is unavailing to Kitchens because at the time he purchased at the tax sale he was attorney for Buck Wheeler and Wesley Wheeler, who were co-tenants with their brothers and sisters in the ownership of such lands as their father had at the time of his death. Likewise, as the holder of the two deeds of trust given to secure his fee, appellant had an estate in the lands with the Wheeler heirs· by reason of his fiduciary relationship as attorney and because of his interest as mortgagee. His purchase at the tax sale, in effect, was a redemption; and his tax deed could not sustain a claim of adverse possession without more forcibly asserting his alleged hostile purposes and bringing them to the attention of those who were interested in the property with him. *Clements* v. *Cates,* 49 Ark. 242, 4 S. W. 776; *Ross* v. *Frick Company,* 73 Ark. 45, 83 S. W. 343.

For the same reason the plea of the five-year statute of limitation was untenable. [This statute, because of its peculiar phraseology, begins to run on the day of the sale, and can begin at no later date. Under the facts in *Kessinger* v. *Wilson, supra,* if the five-year statute of limitations could have started when the homestead estate expired and the estate of inheritance came

into being, it would have constituted a good defense. In the instant case five years had not elapsed at the time Adie Wheeler became of age January 1, 1932].

The plea of the seven-year statute must be disregarded, the litigation having been initiated December 12, 1936, or within seven years from January 1, 1932, which was the earliest date from which the statute could begin to run.

Questions of law urged in the appeal and cross-appeal are not of a character to overturn the chancellor's decree if the facts as found by the court are sustained. The determination of a person's age when records are lacking is often a matter of extreme difficulty. The chancellor's opportunity to hear such witnesses as testified orally, and his familiarity with local conditions, afford advantages in weighing the value of evidence not possessed by this court.

No useful purpose can be served by discussing the contentions *seriatim*. In holding, as we do, that the factual conclusions are not contrary to a preponderance of the evidence, the entire case rests upon legal principles of recognized application.

Affirmed.

### Opinion on Rehearing

The law as declared in *Kessinger* v. *Wilson,* 53 Ark. 400, 14 S. W. 96, 22 Am. St. Rep. 220, still applies in this state. The effect is that where one dies seized of a homestead leaving as heirs minor children, they have two separate and distinct estates in the land, existing at the same time and incapable of merger—the estates of homestead and of inheritance. The former entitles them to entry when the ancestor dies; the latter when the younger child attains majority.

Appellant contends that when the statute of April 17, 1899 (§ 8939, Pope's Digest) was enacted, the rule in the Kessinger Case was changed. The section of the Digest is:

"If any person entitled to bring an action under the laws of this state be at the time of the accrual of the cause of action under twenty-one years of age, or insane, or imprisoned beyond the limits of the state, such person shall be at liberty to bring such action within three years next after full age or such disability may be removed."

This statute was not enacted, as it is contended, to change the rule in the Kessinger Case, but changes the rule in *Sims* v. *Cumby,* 53 Ark. 418, 14 S. W. 623. In the Sims-Cumby Case it was held that the general savings clause of § 4489 of Mansfield's Digest, then in effect, and which gave a three-year grace period to infants within which to bring an action after their disability should be removed, had application only to laws in force at the time of the passage of that statute.

In *Harris* v. *Brady,* 87 Ark. 428, 112 S. W. 974, the opinion points to the application just referred to. In that case a tax purchaser (Jan. 1, 1901) took possession by virtue of such purchase and pleaded the two-year statute of limitation in bar of a suit instituted by the owner of the property to recover. The land was the homestead of the minors, one of whom did not attain his majority until April 11, 1904. The suit was begun April 10, 1905. In line with the Kessinger Case, the court held that there was no right to possession of the homestead until the youngest minor became of age April 11, 1904; and, therefore, the statute of limitation did not begin to run until that day.

The doctrine of *Kessinger* v. *Wilson,* has been re-iterated in such manner as to show that it was not af-fected by enactment of § 8939 of Pope's Digest. An example is *Shapard* v. *Mixon,* 122 Ark. 530, 184 S. W. 399. The decision was in 1916. The court said: "A minor child who inherits the homestead has 'two separate and distinct estates in the homestead existing at the same time and incapable of merger, namely homestead and inheritance." (Citing *Kessinger* v. *Wilson.*)

In *Lesser* v. *Reeves,* 142 Ark. 320, 219 S. W. 15, Mr. Justice Hart, speaking for the court, said: "The adult

heirs had no right to the possession of the homestead until the youngest child became twenty-one years of age, and the statute of limitation did not begin to run against them until the termination of the homestead of the youngest child. Mrs. Mamie Hart was the youngest child and did not become twenty-one years old until July 31, 1914. This suit was commenced on December 1, 1917. Hence the suit was not barred by the statute of limitation."[2] (Citing *Smith* v. *Scott*, 92 Ark. 146, 122 S. W. 501.)[3]

In emphasizing their belief that the court ignored the three-year statute of limitation expressed in § 8939 of Pope's Digest, counsel for appellant seems to have overlooked the fact that in construing the seven-year statute of limitation (Pope's Digest, § 8918) a similar three-year saving clause had to be considered. That statute provides that if at the time of the accrual of a cause of action the person shall be ". . . . within the age of twenty-one years, or *non compos mentis*, that such person or persons, his, her or their heirs, shall and may, notwithstanding said seven years may have expired, bring his or her suit or action so as such infant or *non compos mentis*, his, her or their heirs shall bring same within three years next after full age or coming of sound mind."

That statute, embracing the language quoted, was enacted January 4, 1851; and, therefore, it had for many years been in effect when the Kessinger Case was decided. If existence of that three-year proviso before the decision in *Kessinger* v. *Wilson* permitted the case to be decided as it was, then assuredly there is nothing in the language of § 8939, later enacted, that necessitated a change in the applicable law.

Argument of counsel for appellant seems to be predicated upon their belief that during the existence of the homestead, whether in favor of the widow or minors, a cause of action may accrue in favor of the adult heirs.

[2] More than three years elapsed after Mrs. Hart became of age.

[3] The reference "92 Ark. 146" is to the page of the Report. The opinion begins on page 143.

Of course, if a cause does not accrue, then the statute of limitation does not begin to run; and since the youngest Wheeler child did not become of age until January 1, 1932, the homestead right did not expire until that day, for a minor can do nothing to waive his homestead. *Altheimer* v. *Davis,* 37 Ark. 316. Any suit any of the Wheeler heirs might have instituted prior to January 1, 1932, for recovery of the freehold, as authorized by § 8918 of Pope's Digest, would have been prematurely brought.

One case cited by appellant appears inconsistent—*Cunningham* v. *Dellmon,* 151 Ark. 409, 237 S. W. 450. It was decided in January, 1922. The opinion was written by Mr. Justice Hart, who also wrote the opinion in the Lesser-Reeves Case. The latter case was decided in February, 1920. On page 421 of 151 Ark., on p. 453 of 237 S. W., it is stated that the complaint shows an abandonment of the homestead by the widow and that the purchaser went into possession within five years after a guardian's sale. Certainly, where there is abandonment of homestead by the widow, *that* homestead right ceases. The widow may abandon, though a minor cannot. The opinion then says:

"Therefore, we hold that it is fairly inferable from the allegations of the complaint that the mother of appellant abandoned the homestead by selling it and the statute of limitation then commenced to run against appellant. He is barred of relief either under the five-year statute of limitation relating to purchases at judicial sales or the seven-year statute relating to actions generally to recover lands. C. & M. Digest, §§ 6942 and 6946. Each of these statutes contains a saving clause to minors for a period of three years after their disabilities shall have been removed. In the present case the statute began to run when appellant was a minor, and he waited until nearly seven years after becoming twenty-one years old before he commenced this suit."

It seems that in this opinion the fact was overlooked that when the widow abandoned her homestead, the

homestead right of the minor necessarily continued until he was twenty-one years of age, and that the cause of action under the seven-year statute of limitation could not accrue until he became twenty-one years of age. It also appears that counsel for appellant cited the Kessinger Case. The opinion makes no reference to that decision, and no authority is cited to justify the holding that the cause of action of the minor accrued upon abandonment of the homestead.

Other cases are cited by appellant, but they do not sustain the points urged.

Estoppel and laches are also invoked. Most of the transactions relied upon to create estoppel occurred before January 1, 1932. There can be no estoppel as to a cause of action which did not accrue until after the act relied on to create estoppel occurred. The same is true as to laches. In addition, this suit was originally brought in circuit court as an ejectment proceeding. The rule is well established that laches has no application where the plaintiff is not seeking equitable relief, but undertakes to enforce a legal title, and where title is not barred by the statute of limitation in reference thereto. *Lesser* v. *Reeves, supra,* and cases cited.