Lewis *v.* Bush.

Opinion delivered May 24, 1926.

1. Trusts—construction of pleading.—In an action to foreclose a vendor's lien, where the land was sold by the commissioner to a subvendee, who had previously sold the land by warranty deed, defendants' exceptions to the commissioner's report of sale, alleging that such purchaser was personally liable to defendants by reason of such warranty, and asking that he be declared liable to them, and that a trust be enforced in their favor, was properly treated as a complaint against such purchaser, and, all parties being before the court, it had complete jurisdiction to determine the rights and equities of the parties.

2. Vendor and purchaser—after-acquired title.—Where a purchaser of land conveyed same by warranty deed, without paying the purchase money notes, and subsequently purchased the land on foreclosure of the vendor's lien, he became trustee for those deraigning title under him, under Crawford & Moses' Dig., § 1496.

3. Trusts—constructive fraud.—Unconscientious conduct constituting constructive fraud in equity is a necessary element of a constructive trust, not arising from actual fraud or violation of positive fiduciary obligation.

Appeal from Woodruff Chancery Court, Southern District; *A. L. Hutchins,* Chancellor; reversed.

*Wils Davis,* for appellant.

*Ross Mathis,* for appellee.

Wood, J.   W. T. Trice conveyed to W. J. Lovelace and S. M. Bush about four hundred acres of land in Woodruff County, Arkansas, including lot 3, section 7, township 4 north, range 3 east.   The purchase price was $7,254.94, $462 of which was paid in cash and the balance was evidenced by purchase money notes with a vendor's lien retained in the deed to secure payment of the same. These notes were sold by the vendor Trice to one James, and payments from time to time were made thereon, reducing the amount to $4,285.30.   The grantees, Bush and Lovelace, conveyed lot 3, section 7, to C. C. Hawkins and M. A. Cheshire, by warranty deed, and they in turn conveyed the lot by warranty deed to A. C. and Ruth H. Lewis for a consideration of $3,096 in cash.   James instituted this action to foreclose the vendor's lien on

the notes he had purchased from Trice, and all the parties to the conveyances above mentioned were made parties defendant. A. C. and Ruth H. Lewis answered the foreclosure suit, denying all the allegations of the complaint. There was a decree of foreclosure, and all the lands originally sold, including lot 3 above described, upon which the vendor's lien was retained, were ordered to be sold to satisfy the notes. A commissioner was appointed to make the sale and directed to sell, first, all the property except lot 3, and then to sell lot 3. The commissioner duly advertised the land and made the sale as directed in the decree. Bush purchased all of the land at the sale. For lot 3 he paid the sum of $750, as shown in the report of the commissioner.

When the commissioner's report came in, A. C. and Ruth H. Lewis filed their exceptions thereto, setting up substantially the above facts, and alleging that Bush was personally liable on the notes, and that he became by warranty deed one of the remote grantors of A. C. and Ruth H. Lewis, and, notwithstanding that fact, he procured a release of certain parts of the land on which the original vendor's lien was retained to secure the notes, and permitted a judgment to be taken against himself and A. C. and Ruth H. Lewis on the notes, and permitted the sale of the lands, including lot 3, which had been conveyed by warranty deed to A. C. and Ruth H. Lewis; that he appeared at the sale and purchased the lot for the sum of $750, as above stated. They concluded their pleadings, designated "exceptions to the commissioner's report," with the following prayer:

"Your exceptors pray that this honorable court enter a decree declaring the same S. M. Bush to be primarily liable for the payment of said notes; that he became the purchaser of said property absolutely when he made the bid; that any title which he obtained be declared to be held in trust by him for the use and benefit of these defendants (A. C. and Ruth H. Lewis); that this honorable court further by decree declare that said title was an afterwards-acquired title and flows into these defend-

ants by reason of the warranty deed above set out, and for such other equitable relief as the court may deem proper in the premises.''

The cause was heard upon an agreed statement setting forth the facts substantially as above, in which it is recited: ''It is agreed and stipulated that the following agreed statement of fact shall be used as evidence in this cause on the exceptions filed by A. C. and Ruth H. Lewis to the report of the commissioners regarding the sale of land under the decree entered herein. It being further agreed that said exceptions may also be treated as a motion for equitable relief prayed for therein.'' The decree of the court recites in part as follows: ''This cause came on to be heard on this the 14th day of November, 1924, upon the exceptions of A. C. and Ruth H. Lewis, and all parties being present, the cause was submitted to the court upon the agreed statement of facts, the report of the commissioner, and on motion the exceptions of the report of the commissioner were treated also as a prayer to declare a resulting trust. * * * And the court, being well and sufficiently advised, doth find that there was no trust created in favor of the defendants A. C. and Ruth H. Lewis by reason of the purchase of said lands by defendant S. M. Bush. It is therefore considered, ordered and decreed that the exceptions and petition filed by the defendants A. C. and Ruth H. Lewis be and the same are hereby dismissed for want of equity.'' From that decree is this appeal.

The agreed statement of facts and the recitals of the decree show that all the parties in interest were before the court, and that, as between the appellants and the appellee Bush, the court treated the cause as if it were an action by the appellants against the appellee Bush to have him declared a trustee and as holding title to the lot in controversy for the benefit of the appellants, and as if he had denied that the facts were sufficient to entitle the appellants to the relief prayed. The court ruled correctly in so treating the cause, but erred in ren-

dering a decree in favor of the appellee upon the issues and facts presented. Bush, as one of the original purchasers and makers of the notes secured by the vendor's lien foreclosed in this action, was primarily liable on these notes which he failed to pay. He and Lovelace, the original purchasers, had sold the lot in controversy by warranty deed to Hawkins and Cheshire, and they in turn by warranty deed had sold the lot to the appellants. All these parties were before the court. Bush was liable on his warranty to Hawkins and Cheshire, and they in turn were liable on their warranty to the appellants. The appellants' exceptions, as already stated, were and should have been treated as a complaint against Bush and Lovelace and appellants' immediate grantors, to establish a trust and to hold Bush and Lovelace and appellants' immediate grantors liable on their warranty. Under the issues and facts thus presented, the chancery court had complete jurisdiction to determine the cause with respect to the rights and equities of all the parties in interest. When Bush sold the land by warranty deed, he became liable to those who deraigned title from him to make his title good. Therefore, when he failed to pay the notes on which he was liable for the original purchase money, and thus permitted the land to be sold, and acquired title to the same by purchasing at the foreclosure sale, he became in reality a trustee to those who deraigned title under him. To hold otherwise would enable him to perpetrate a fraud upon them. Section 1498 of C. & M. Digest provides: "If any person shall convey any real estate by deed, purporting to convey the same in fee simple absolute, or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance."

In *Haskell* v. *Patterson,* 165 Ark. 65, 262 S. W. 1002, we quote from Mr. Pomeroy as follows: "Constructive

trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and, in most cases, contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of trust. They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed trusts *in invitum.*" Continuing, the learned author further says: "An exhaustive analysis would show, I think, that all instances of constructive trusts, properly so called, may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source. Even in that single class where equity proceeds upon the maxim that an intention to fulfill an obligation should be imputed, and assumes that the purchaser intended to act in pursuance of his fiduciary duty, the notion of fraud is not invoked, simply because it is not absolutely necessary under the circumstances; the existence of the trust in all cases of this class might be referred to constructive fraud. * * * Certain species of the constructive trusts arise from actual fraud; many others spring from the violation of some positive fiduciary obligation; in all the remaining instances there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud." *Pharr* v. *Fink,* 151 Ark. 305, 237 S. W. 728; *Bragg* v. *Hartney,* 92 Ark. 55-59; 26 R. C. L., p. 1232.

Under the above statute and the doctrine of constructive trusts announced by Mr. Pomeroy, the purchase by Bush of the lot in controversy should be treated by him as a redemption of the land from the foreclosure

sale for the benefit of those who deraigned title under
him, and he should be declared a trustee of such title,
holding the same for their benefit.   The decree is there-
fore reversed, and the cause is remanded with directions
to the chancery court to require the appellee Bush to
make good his warranty by conveying the lot in contro-
versy to the appellants, and, if not, by such other appro-
priate orders as may be necessary for that purpose.