SHEPPARD *v.* ZEPPA, TRUSTEE.

4-5418 133 S. W. 2d 860

Opinion delivered October 30, 1939.

*Don McCleod, James H. Nobles, Jr.,* and *J. R. Wilson,* for appellants.

*Boone T. Coulter,* for cross-appellants.

*Claude B. Crumpler, Jeff Davis, S. E. Gilliam* and *Robert C. Knox,* for appellees.

GRIFFIN SMITH, C. J. Title to 160 acres of land described as the south half of the southeast quarter of section twenty-two, and the north half of the northeast quarter of section twenty-seven, township eighteen south, range seventeen west, is involved in this suit.

### STATEMENT OF THE CASE

Prior to his death, intestate, Frank Sheppard, Sr., was the owner of several hundred acres of land in Union county, including that described in the preceding paragraph. The senior Sheppard had conveyed such lands to his son, Frank, but the deed had been lost or destroyed.

April 27, 1916, Jane Sheppard, widow of Frank, Sr., and Georgiana Sheppard and Lilly Sheppard Cooksey (the last two, with the exception of the son, Frank, Jr., being the remaining surviving heirs-at-law of Frank Sheppard, Sr.) conveyed the lands to Frank, Jr.

The record is voluminous. The controversies were elaborately presented to the chancellor; and, as the result discloses, the latter made an exhaustive study of the conflicting contentions, and a finding of facts was based thereon.

The court found that Frank, Jr., married Geneva Braxton January 26, 1913, and that to such marriage two children were born: Lowell Harrison Sheppard (December 14, 1913), and Stephen Douglas Sheppard (June 9,

1917). For several years after 1913, Frank, Jr., with his wife, Geneva, occupied said lands as Frank's homestead.

Frank (Junior) died intestate in France April 9, 1918, seized and possessed of such lands, then occupied by his family as a homestead. He left surviving, as his heirs-at-law, Lowell Harrison Sheppard and Stephen Douglas Sheppard. Geneva Braxton Sheppard also survived him.

Frank's widow and minor children continued to occupy the lands in question as their homestead until some time during 1935. Taxes were regularly paid thereon until 1930, at which time they became delinquent. In due course the property forfeited and was certified to the state for the unpaid taxes of 1930. The facts so found by the trial court are sustained by a preponderance of the evidence.

The state, by deed No. 42077 dated November 23, 1934, conveyed its interest in the lands to S. B. (Pete) McCall. The deed was recorded in Union county.

According to evidence adduced, and under findings of the chancellor, title to the 160 acres, treated as separate 80's, is deraigned as follows:

*North Half of the Northeast Quarter of Section 27:* By quitclaim deed of February 9, 1935, McCall conveyed to Geneva Sheppard Miller, formerly Geneva Braxton Sheppard, widow of Frank Sheppard, Jr.

December 23, 1935, Geneva Sheppard Miller and Lowell Harrison Sheppard, by warranty deed, reconveyed to McCall the northwest quarter of the northeast quarter of said section.

October 11, 1935, Lowell Harrison Sheppard, by quitclaim deed, conveyed all his right, title and interest in the north half of the northeast quarter of section 27, the conveyance being to his mother, Geneva Sheppard Miller. At the time this instrument was executed, Lowell Harrison Sheppard was of age.

June 11, 1936, Geneva Sheppard Miller executed to W. T. McKinnon, trustee, deed to one-half of the mineral rights of the northeast quarter of the northeast quarter of section 27.

June 15, 1926, Geneva Sheppard Miller, as guardian of Lowell Harrison Sheppard, and in her individual right, executed to Joe Zeppa, trustee, a warranty deed to an undivided one-fourth interest in the mineral rights of the north half of the northeast quarter. (By mesne conveyances the title so acquired, whatever it may have been, subsequently vested in the defendant, Arkansas Fuel Oil Company).

July 8, 1926, Geneva Sheppard Miller, as guardian of Lowell Harrison Sheppard, by warranty deed conveyed an undivided one-fourth interest in the mineral rights of the north half of the northeast quarter, W. L. Anderson taking thereunder. (By mesne conveyances, two-twelfths of the title so acquired, whatever it may have been, vested in H. R. Dickerson and the heirs of L. T. Campbell, defendants herein. The one-twelfth interest of Anderson was later subjected to an oil and gas lease in favor of Delta Drilling Company, dated April 1, 1937.)

September 24, 1937, Geneva Sheppard Miller executed to W. L. Anderson quitclaim deed covering an undivided one-fourth interest in the mineral rights of said 80-acre tract.

April 6, 1937, McCall, by warranty deed, conveyed to Wilmer Davis the south half of the northwest quarter of the northeast quarter, and to Almer Davis five acres off the south side of the north half of the northwest quarter of the northeast quarter.

April 14, 1937, McCall conveyed to Moddie and Willie Steward the north fifteen acres of the north half of the northwest quarter of the northeast quarter of section 27. (In each of the deeds so executed by McCall, he attempted to reserve certain mineral rights.)

*South Half of the Southeast Quarter of Section 22:* February 9, 1935, Geneva Sheppard Miller and Lowell Harrison Sheppard, by warranty deed, conveyed to S. B. McCall the south half of the southeast quarter of section 22. (At that time Lowell Harrison Sheppard was of age.)

April 26, 1936, McCall executed to Sun Oil Company an oil and gas lease covering such lands.

March 23, 1937, McCall conveyed to G. W. James a seven-sixteenth interest in the mineral rights. He also conveyed an undivided one-sixteenth interest in the mineral rights to Clyde E. Byrd.

Thereafter, by mesne conveyances, a one-sixty-fourth interest of the seven-sixteenths interest conveyed by McCall to James passed to Samuel H. Eby. Eight sixty-fourths went to C. W. Lane and C. W. Lane Company, Inc.; eight sixty-fourths passed to W. H. North, and eleven sixty-fourths went to the heirs of George. W. James. The one-sixteenth interest conveyed to Byrd passed by mesne conveyances to Roy Dickenson and Leona E. Wilson, two sixty-fourths to each in separate transactions. (McCall also executed conveyances of oil and mineral rights to J. H. Alphin and to C. M. Paynes, trustee; but, as indicated by the decree, these deeds were subsequent in date to those executed by McCall to James and Byrd. The decree, however, states that settlement of the rights, if any, of Alphin and Paynes, trustee, under these deeds, was effectuated out of court prior to the decree.)

April 14, 1937, McCall executed to Moddie and Willie Steward a warranty deed to this 80-acre tract, but attempted to reserve certain oil and mineral rights therein.

August 23, 1937, Stephen Douglas Sheppard, a minor, by Jane Sheppard as next friend, filed his complaint in which Geneva Sheppard Miller and Lowell Harrison Sheppard were named defendants, along with others who were asserting adverse claims. By the suit the plaintiff sought to recover his homestead estate and his estate of inheritance in the lands identified, *supra*. Geneva Sheppard Miller and Lowell Harrison Sheppard answered. They also filed a cross-complaint against their co-defendants. In the cross-complaint it was alleged, in substance, that the deeds executed by them to McCall were procured by fraud induced by misrepresentations. They sought to recover, as against their codefendants, their homestead rights and the estate of inheritance.

Answers of all interested parties were filed, both as to the original complaint of Stephen Douglas Sheppard and the cross-complaint of Geneva Sheppard Miller and

Lowell Harrison Sheppard. Moddie Steward and Willie Steward answered, admitting the title of Frank Sheppard and forfeiture of the lands to the state. They admitted that McCall conveyed to them the south half of the southeast quarter of section 22 and fifteen acres of the northwest quarter of the northeast quarter of section 27, but denied that McCall reserved any mineral rights in the lands. By way of cross-complaint they set up various conveyances and asked for the cancellation thereof, and that title be quieted in themselves.

Wilmer Davis, who had acquired a deed from McCall to the south half of the northwest quarter of the northeast quarter of section 27, adopted the answer and cross-complaint of Moddie and Willie Steward. Almer Davis, who had acquired from McCall a deed to five acres off the south side of the northwest quarter of the northeast quarter of section 27, filed answer and cross-complaint identical with that of Wilmer Davis.

On issues so joined, after introduction of a mass of testimony and documentary evidence, a great part of which was oral, the chancellor, after an exhaustive presentation, made findings of facts and entered final decree.

*The Decree.*—In addition to the chancellor's findings heretofore recited, there is a special finding that McCall did not claim any further interest in the lands; that Stephen Douglas Sheppard was a legitimate son of Frank Sheppard, Jr.; that there was no evidence in support of the allegations of Geneva Sheppard Miller and Lowell Harrison Sheppard that the deeds executed by them to McCall were procured by fraud or misrepresentation, and that such deeds should be sustained.

On the findings so made the chancellor held as a matter of law that Stephen Douglas Sheppard was entitled to recover the 160-acre tract of land as his homestead, but that such homestead rights ceased June 9, 1938. The court further held that Stephen Douglas Sheppard was entitled to recover ". . . his estate by inheritance to the extent of an undivided one-half interest therein." This interest was confirmed and quieted in Stephen Douglas Sheppard as against each named defendant. The cross-complaints of Geneva Sheppard Mil-

ler and Lowell Harrison Sheppard were dismissed for want of equity. Likewise, the cross-complaints of Moddie and Willie Steward, and of Wilmer and Almer Davis, were dismissed for want of equity.

The chancellor then found, and so declared, that the interest of Stephen Douglas Sheppard, as quieted in him, did not conflict with the oil, gas, and other mineral rights claimed by Zeppa, trustee, or with the interests claimed by Dickenson, Anderson, Dickerson, the heirs of L. T. Campbell, Arkansas Fuel Oil Company, Delta Drilling Company, George W. James, Samuel H. Eby, Leona E. Wilson, C. W. Lane, C. W. Lane Company, Inc., or W. H. North, trustee. The complaint was dismissed insofar as it related to the oil, gas, and other mineral rights in the lands, as claimed by the defendants. The court further found, and so declared, that as to the lands attempted to be conveyed to Almer Davis, Wilmer Davis, and Moddie Steward and Willie Steward, Stephen Douglas Sheppard should recover the mineral rights thereof, and should also recover an undivided one-half interest in the surface rights.

As to the north half of the northeast quarter of section 27, the effect of the decree, as we construe it, is to quiet title in the oil, gas, and other mineral rights in Stephen Douglas Sheppard, and in the several defendant claimants, as follows:

Stephen Douglas Sheppard, an undivided one-half interest; Arkansas Fuel Oil Company, an undivided one-fourth interest; widow and heirs of L. T. Campbell, an undivided one-twelfth interest; H. R. Dickerson, an undivided one-twelfth interest; W. L. Anderson (subject to oil and gas lease executed by him to Delta Drilling Company), an undivided one-twelfth interest.

As to the south half of the southeast quarter of section 22, the construction we place upon the decree is that it quiets title in the oil, gas, and other mineral rights as follows:

Stephen Douglas Sheppard, an undivided one-half interest; Samuel H. Eby, an undivided one-sixty-fourth interest; G. W. James, an undivided eleven-sixty-fourths interest; W. H. North, trustee, an undivided eight-sixty-

fourths interest; C. W. Lane and C. W. Lane Company, Inc., an undivided eight-sixty-fourths interest; Roy Dickerson, an undivided two-sixty-fourths interest, and to Leona E. Wilson, an undivided two-sixty-fourths interest.

Rights of Sun Oil Company under its lease from McCall, were properly preserved in the decree.

From the decree so entered, Stephen Douglas Sheppard appealed. He ''. . . seeks a reversal . . . as to those oil, gas, and mineral rights awarded defendants, and as to the interests so found.''

Seven alleged errors are assigned, all of which relate to action of the court in sustaining validity of the deeds executed by Geneva Sheppard Miller as guardian of Lowell Harrison Sheppard, and also executed in her individual capacity; also as to the deeds executed by Lowell Harrison Sheppard. Principal contention under all of the assignments is that the court erred in sustaining the muniments of title of the several defendants as against the rights contended for, particularly those of Stephen Douglas Sheppard.

## OPINION

On the death of Frank Sheppard, Junior (intestate), title to the lands vested in his widow, Geneva, and in the minor children, Lowell Harrison Sheppard and Stephen Douglas Sheppard, under applicable laws of descent. The widow had a life estate. The minors had two separate and essentially distinct estates: the homestead estate, and the estate of inheritance. These estates are incapable of merger. *Shapard* v. *Mixon*, 122 Ark. 530, 184 S. W. 399; *Kessinger* v. *Wilson*, 53 Ark. 400, 14 S. W. 96, 22 Am. St. Rep. 220.

When Lowell Harrison Sheppard reached his majority, his homestead interest ceased. The widow (Geneva), by alienation to McCall, abandoned her homestead interest. Therefore, the homestead estate in its entirety vested in Stephen Douglas Sheppard until he became of age. In addition, he had an undivided one-half interest—his estate of inheritance—in the whole of the lands. This, as we understand the decree, was quieted in him, without restriction. To this he was entitled, but to no more. Therefore, irrespective of any attempted

alienation by Geneva Sheppard Miller and Lowell Harrison Sheppard by virtue of their deeds, and regardless of the probate court proceedings and conveyances authorized thereunder, the interests of Stephen Douglas Sheppard remained, and they were preserved intact by the chancellor.

Our construction of the decree is that Stephen Douglas Sheppard was given his homestead interest, and an undivided one-half interest in fee in the lands as his estate of inheritance, the latter carrying with it as of necessity an undivided interest in all of the oil, gas, and minerals pertaining to the lands. This being true, Stephen Douglas Sheppard has no cause for complaint.

That the conclusion reached by the chancellor in this respect is correct is evident when the title is deraigned. Regardless of the tax forfeiture, and irrespective of the probate court proceedings had prior to the date when Lowell Harrison Sheppard reached his majority, his homestead estate in the lands ceased at that time. But, conceding that the probate court proceedings did not divest his interest, his estate of inheritance became alienable, subject, of course, to the rights of the minor, Stephen Douglas Sheppard. When, on February 9, 1935, Lowell Harrison Sheppard (being then of age) executed and delivered to McCall a warranty deed conveying the south half of the southeast quarter of section 22, he thereby (in the absence of fraud) disposed of all interest he then had—his estate of inheritance in the 80-acre tract.

Likewise, under the quitclaim deed executed by Lowell Harrison Sheppard to his mother October 11, 1935, he legally disposed of his estate of inheritance in the north half of the northeast quarter of section 27. And again, by warranty deed of December 23, 1935, he joined his mother in conveying to McCall, by warranty deed, the northwest quarter of the northeast quarter of section 27. Under these deeds the grantors divested themselves of all interest in the whole of the tract involved in this litigation, which passed by mesne conveyances to certain of the named defendants. Certainly Stephen Douglas Sheppard is without cause for complaint insofar as these several conveyances are held not

to conflict with his admitted interest. It follows that the decree of the chancellor quieting in Stephen Douglas Sheppard an undivided one-half interest in the lands, as well as in the oil, gas, and mineral rights pertaining thereto, and in holding that the rights of the other named defendants were not in conflict with the title so quieted in him, was correct, and it is affirmed.

The chancellor dismissed the cross-complaints of Lowell Harrison Sheppard and Geneva Sheppard Miller, and of H. L. Edwards, trustee, their last-named grantee, against all named defendants. We think this, also, was correct.

Lowell Harrison Sheppard became of lawful age in December, 1934. February 9, 1935, as heretofore shown, he conveyed to McCall his undivided interest in the south half of the southeast quarter of section 22, a warranty deed having been executed. October 11, 1935, he conveyed to his mother an undivided interest in the north half of the northeast quarter of section 27. December 12, 1935, he joined his mother in a warranty deed, under which he conveyed to McCall the northwest quarter of the northeast quarter of section 27. He then waited until January 6, 1938—a period of more than three years after attaining his majority—before attacking any of these deeds. He now contends that the deeds executed to McCall were procured by fraud and misrepresentation. The chancellor found otherwise. Such finding is not contrary to a preponderance of the evidence.

Limitation statutes are not involved. As to the right to attack the probate court proceedings, we are of the opinion that the question there presented is not one of limitation. By the deed to his mother, Lowell Harrison Sheppard thereby quieted the title in her grantees, which she as his guardian undertook to dispose of—that is, the mineral rights in the lands in section 27. He was of full age when he executed the deeds to McCall and to his mother. To now allow him to set these deeds aside and to question the titles acquired by the several defendants from his grantees, McCall and his mother, would not comport with equity. Therefore, the decree in respect of these transactions is correct. Validity or invalidity of

the probate court proceedings is not involved for any purpose other than to afford a predicate for ratification thereof by Lowell Harrison Sheppard.

*As to the Appeal of Geneva Sheppard Miller.*—The finding of the chancellor that the evidence did not show fraud or misrepresentation by McCall in procurement of the deeds from Geneva Sheppard Miller and Lowell Harrison Sheppard effectually disposes of any claim by Geneva Sheppard Miller to the south half of the southeast quarter of section 22, and to the northwest quarter of the northeast quarter of section 27. As to the mineral rights in the northeast quarter of the northeast quarter of section 27, the appellant (Geneva) conveyed an undivided one-fourth interest to Zeppa by warranty deed dated June 15, 1926. In other words, in the deed which she executed as guardian on behalf of Lowell Harrison Sheppard, she expressly warranted the title. Conceding that she, personally, had nothing at that time but a life estate, and irrespective of validity of the probate court proceedings, the fact remains that when she subsequently acquired the interest of Lowell Harrison Sheppard in the north half of the northeast quarter of section 27, by quitclaim deed dated October 11, 1935, such title as she had previously attempted to convey and warrant to Zeppa passed to him and to his grantees. Section 1798 of Pope's Digest. At a later date (September 24, 1937) she executed to W. L. Anderson a quitclaim deed to an undivided one-fourth interest in the oil, gas, and mineral rights in the whole of the 80-acre tract. It follows that her cross-complaint against Zeppa and Anderson and their grantees, and as against McCall and his grantees, was properly dismissed.

*Cross-Appeal of Wilmer Davis, Almer Davis, Moddie Steward and Willie Steward.*—McCall acquired the title of Geneva Sheppard Miller and Lowell Harrison Sheppard to the northwest quarter of the northeast quarter of section 27. He conveyed to Wilmer Davis the south 20 acres of this tract. To Almer Davis he conveyed the south five acres of the north half thereof, and to Moddie Steward and Willie Steward he conveyed the north fifteen acres of the north half of the tract.

The deed executed by McCall to Wilmer Davis contains this provision: "Grantor hereby reserves to himself, his heirs, assigns and successors, an one-fourth of the mineral rights upon and under said land." The same provision is found in the deed executed by McCall to Almer Davis.

McCall also acquired from Geneva Sheppard Miller and Lowell Harrison Sheppard, by warranty deed, Lowell's undivided one-half interest in the south half of the southeast quarter of section 22, the surface of which he subsequently attempted to convey to Moddie Steward and Willie Steward. In the deed executed by him to the Stewards there is a reservation in the following form:

"All mineral rights in, upon and under the southeast quarter of the southeast quarter of section 22, and also mineral rights in, upon and under the north fifteen acres of the northwest quarter of the northeast quarter of section 27. Also all mineral rights in, upon and under the southwest quarter of the southeast quarter of section 22, save and except one-eighth of one-eighth royalty [thereon], which is hereby conveyed to said Stewards."

We first dispose of the Steward appeal. As to the south half of the southeast quarter of section 22, McCall, under his deed from Geneva Sheppard Miller and Lowell Harrison Sheppard (February 9, 1935) acquired Lowell's estate of inheritance—an undivided one-half interest in this tract. On March 23, 1937, he conveyed to James a seven-sixteenths interest in the mineral rights therein, and to Byrd an undivided one-sixteenth interest. It follows that on April 14, 1937—the date of his deed to the Stewards—he had previously disposed of the gas, oil, and mineral rights acquired from Lowell Harrison Sheppard. So, regardless of the validity of the reservation of the oil, gas, and mineral rights set out in the Steward deed, no title to the oil, gas, or mineral rights could have passed to the Stewards under the deed.

As to the oil, gas, and mineral rights pertaining to the 15-acre tract conveyed by McCall to the Stewards, it appears that McCall acquired the undivided one-half

interest of Lowell Harrison Sheppard under a deed executed to him by Lowell and his mother, December 23, 1935. Whether he took title subject to the rights of Anderson and Zeppa under the guardian's deed is immaterial for the reason that the deed executed to the Stewards expressly reserved ". . . the mineral rights in, upon and under the north fifteen acres of the northwest quarter of the northeast quarter of section 27." We hold that this reservation was effective to withhold oil, gas, and other minerals from the conveyance.

As to the oil, gas, and mineral rights claimed by Wilmer Davis in the south twenty acres of this tract, and by Almer Davis to the south five acres of the north half thereof: McCall acquired the undivided one-half interest of Lowell Harrison Sheppard by warranty deed executed by Lowell and his mother, December 23, 1935 —this, provided the probate court proceedings under which Zeppa and Anderson claimed be held invalid. We do not deem it necessary that the validity or invalidity of the probate proceedings be determined in order to dispose of the appeal of Wilmer and Almer Davis, for the statement is made by their counsel that "Cross-appellants raise no question concerning their validity." (The term "their" relates to the conveyances of the guardian to Zeppa and Anderson.) So, admitting the validity of the conveyances by the guardian to Zeppa, trustee, and to Anderson, the undivided one-half interest of Lowell therein is now vested in the named defendants in whom the court quieted title. By the same process of reasoning, McCall acquired no interest in the gas, oil, and mineral rights by virtue of his deed from Lowell Harrison Sheppard and Geneva Sheppard Miller, and of course could not convey an interest therein to Wilmer and Almer Davis under the deeds executed by him—and this, too, irrespective of the reservation of mineral rights contained in said deeds.

A great deal of time has been spent in exploring the abstract of the record, and in resort to the transcript, in an effort to deraign the complex and complicated title to the lands involved in this appeal. The record is replete with duplications, and an enormous mass of evidence im-

material to the issues appears. The abstract of the record, as well as the transcript, contains innumerable errors as to dates and filings. As a consequence, there devolved upon the court the extraordinary duty of deraigning titles in order that the respective rights and diverse interests of the many clients be ascertained. In cases of this kind the trial court renders great service to the appellate tribunal in reducing to writing and making a part of the record the essential findings of facts, and the conclusions of law. A written opinion by the trial court would be helpful.

The decree is in all respects affirmed.