DeLay, Incompetent, v. Bond and DeLay, Incompetent, v. Barnsdall Oil Company.

4-7226 and 4-7227 · 177 S. W. 2d 772

Opinion delivered February 7, 1944.

R. L. Searcy, Jr., for appellant.

Graves & Graves, for appellee.

Smith, J. On November 12, 1942, appellee, Barnsdall Oil Company, filed its petition for the confirmation of its title to oil and gas leases on ten separate tracts of

land, under the authority of our Quieting of Title Statutes, §§ 10958, *et seq.*, Pope's Digest. On the same day, Barnsdall Oil Company and S. Edgar Bond filed a similar petition, on the same authority, for the confirmation of title to a quarter section of land and a 40-acre tract.

The record is voluminous in each of these cases, and was made so by the incorporation therein of the deeds which constitute the chains of title under which petitioners claim title. No useful purpose would be served by deraigning this title, and it will suffice to say that an unbroken chain of title was shown in each case from the United States Government, with certain exceptions, presently to be noted.

The petitioners acquired their title from different grantors, but there appears in each of these chains a deed in which Nettie D. DeLay was a grantor, and the validity of this deed is the determining question as to the validity of the title which the petitioners sought to confirm.

One Frank Q. Stuart had the record title to a tract of land comprising 8,600 acres, situated in Hempstead and Lafayette counties. The deed to him did not reflect the fact, which is not questioned, that Stuart held this title in trust, apparently for H. O. Penick and Jacob B. DeLay. This trust, under which Stuart held title, was dissolved by a conveyance from Stuart of an undivided two-thirds interest to H. O. Penick, there being two conveyances from Stuart to Penick, each of an undivided one-third interest. Stuart conveyed the other undivided one-third interest to Jacob B. DeLay's three children, and this apparently was done with the consent and at the direction of Jacob B. DeLay.

There appears in the chain of title a deed from F. Leonard Pooley to Jacob B. DeLay, but it only inferentially appears that Pooley had any interest in the land, that being an interest in the trust of which Stuart was trustee, as the deed from Stuart to Jacob B. DeLay's children shows on its face that this deed from Stuart conveyed the undivided one-third interest theretofore

claimed by Pooley and the interest conveyed to Jacob B. DeLay by Pooley is the Pooley interest which DeLay directed Stuart to convey to DeLay's children.

After Stuart dissolved the trust, by the conveyance of a two-thirds interest to Penick and a one-third interest to Jacob B. DeLay's children, these grantees effected a partition of the land thus conveyed. This partition was effected by a conveyance to Penick from the DeLay heirs of their one-third interest in certain lands, and by a conveyance to them from Penick of his two-thirds interest in certain other lands. It is clearly shown that after the conveyance from Penick to DeLay's children none of the DeLays ever thereafter claimed any interest in the land.

DeLay's children were, a son named T. S., another named Clyde, and a daughter named Nettie, these being all of his children, and there were no descendants of other children. Jacob B. DeLay died intestate March 31, 1905, and was survived by his widow and these three children. His widow died intestate, without having remarried, in 1921.

Without further deraigning the title, it may be repeated that there appears in the chain of title, under which petitioners claim, a deed from Jacob B. DeLay's three children to H. O. Penick, and, as has been said, the decision of the case here presented turns upon the validity of this deed, as a decree was rendered quieting the title of petitioners, and from that decree is this appeal.

On May 24, 1902, Nettie DeLay joined her two brothers in the execution of the deed above referred to, to Penick, since which time none of the DeLays have claimed any interest in the land, and have never since paid any taxes thereon. On the contrary, persons claiming under this chain of title, have for many years been in the actual possession of the land, claiming title thereto, and have paid the taxes for nearly 40 years.

The lands have become very valuable, on account of the discovery of oil, and this value led to a minute and particular investigation of the title, which disclosed the

fact that Nettie DeLay became *non compos* in 1906 and was committed to the State Hospital in the state of Iowa, but was later discharged. She was again committed to the State Hospital in 1908, but was discharged in 1909, and in 1918 was again committed to the hospital, where she has since been and is now confined as an insane person.

These facts raised the question as to the validity of the conveyance by Nettie D. DeLay to Penick, and it was sought to remove this cloud by obtaining an order from the probate court of the county in Iowa where Nettie resided, directing her guardian to execute a quitclaim deed. One of her brothers was her guardian, and this brother, individually, and as her guardian, and the other brother, joined in the execution of the deed. The validity of this deed being questioned, the confirmation suits were filed. The sufficiency of the service in that proceeding is shown and not questioned.

Upon the hearing of the petition for confirmation, both of these brothers of Nettie, now old men, appeared in open court and testified, and their testimony shows them to be men of intelligence and candor. They each had owned the same interest as their sister did, and each testified that they claimed no interest in the land, having previously conveyed their interest in the land to Penick. They both testified that their sister was a high school graduate, and a woman of strong character, and thoroughly familiar with all her business affairs, and that she and they understood the purpose and effect of their deed to Penick. They testified that their deed to Penick was executed May 4, 1902, at which time their sister was in full possession of all of her faculties, was an exceptionally able person, and that her mental derangement did not develop and was not suspected until after the death of their father, which occurred in 1905.

The court made the finding of fact that Nettie DeLay was sane and of sound mind when she executed this deed; and we think the testimony very certainly and very clearly supports this finding, and this being true, it is unimportant that she later became *non compos*.

Jacob B. DeLay was survived by his wife, now long since dead, and by these two sons and daughter, these being their only heirs-at-law. If it were contended, and it does not appear to be, that these children acquired by inheritance from their father or mother any interest in the land, which they did not own when they conveyed to Penick, it may be answered that their deed to Penick purported to convey the lands in fee simple absolute, although there was no warranty of title, and, under § 1798 of Pope's Digest, any interest which they may have since acquired by inheritance or otherwise, passed under this deed. *Lewis* v. *Bush,* 171 Ark. 192, 283 S. W. 377; *Sheppard* v. *Zeppa, Trustee,* 199 Ark. 1, 133 S. W. 2d 860.

Nettie's brother, who was her acting guardian, was made a party to this proceeding, as was her other brother. The court appointed a guardian *ad litem,* and this latter, to fully discharge his duties under that appointment, has prosecuted an appeal to have this court decide what he calls the only real issue in the case, that is, whether Nettie had the mental capacity required by law to execute a valid deed on May 24, 1902, when she joined her brothers in the execution of a deed to Penick. We think the court below was fully warranted in finding that she had this capacity, and the decree is, therefore, affirmed.

McFADDIN, J., nonparticipating.