HAYES *v.* COATS.

4-9446

238 S. W. 2d 935

Opinion delivered March 26, 1951.

Rehearing denied May 21, 1951.

*Melvin T. Chambers,* for appellant.

*Keith & Clegg,* for appellee.

Ed. F. McFaddin, Justice. This suit involves the application of our "After-acquired Title" Statute, which is § 50-404, Ark. Stats., and reads:

"If any person shall convey any real estate by deed purporting to convey the same in fee simple absolute, or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance. (Rev. Stat., ch. 31, § 4; C. & M. Dig., § 1498; Pope's Dig., § 1798.)"

In 1922 W. G. Hayes mortgaged certain lands to D. D. Goode, and thereafter executed the five mineral deeds here in question, *each of which contained a covenant of general warranty.* The mortgage and mineral deeds were promptly recorded. Thereafter, in 1933, Goode foreclosed his mortgage and made Hayes and all the mineral deed holders defendants in the foreclosure suit, in order to cut off the rights of all junior title claimants. A decree was duly rendered and Goode purchased the property at the foreclosure sale. Two years later, in 1935, Goode reconveyed all of the property to Hayes, the same person who had executed the mineral deeds that contained the covenants of general warranty.

The holders of the mineral deeds claimed, that when Hayes reacquired title to the property then our "After-acquired Title" Statute estopped Hayes from disputing the validity of the mineral conveyances which he had executed and which contained the covenants of general warranty. Hayes instituted this suit to have his title quieted against the mineral deed holders. The Chancery Court sustained the claims of the mineral deed holders, and Hayes has appealed.

We affirm the Chancery decree. Our "After-acquired Title" Statute comes to us from the Revised

Statutes of 1836, and has been applied by this Court in many cases, of which the following are only a few: *Stone* v. *Morris,* 177 Ark. 745, 7 S. W. 2d 796; *Broadway* v. *Sidway,* 84 Ark. 527, 107 S. W. 163; *Lewis* v. *Bush,* 171 Ark. 192, 283 S. W. 377; *Sheppard* v. *Zeppa,* 199 Ark. 1, 133 S. W. 2d 860; and *Fox* v. *Three States Lmbr. Co.,* 85 Ark. 497, 108 S. W. 1137.[1]  See, also, Jones "Arkansas Titles", § 129.

In *Lewis* v. *Bush, supra,* Bush had executed a mortgage on lands, and then sold a portion thereof by a deed containing a covenant of general warranty.  Bush suffered the mortgage to be foreclosed and bought the lands in at the foreclosure sale.  Lewis, holding under the warranty deed executed by Bush, claimed that Bush's reacquisition of title inured to the benefit of Lewis under the "After-acquired Title" Statute.  Mr. Justice Wood, in upholding Lewis' claim, quoted the "After-acquired Title" Statute as applicable, after first saying:

". . . When Bush sold the land by warranty deed, he became liable to those who deraigned title from him to make his title good.  Therefore, when he failed to pay the notes on which he was liable for the original purchase money, and thus permitted the land to be sold, and acquired title to the same by purchasing at the foreclosure sale, he became in reality a trustee to those who deraigned title under him.  To hold otherwise would enable him to perpetrate a fraud upon them."

In the case at bar Hayes did not purchase at the foreclosure sale, but remained in possession of the property and purchased from Goode two years later; but when Hayes reacquired the title, the Statute (§ 50-404) served to pass his after-acquired title to the persons who held the mineral deeds which he had executed.

In *Stone* v. *Morris, supra,* Tyson executed a first mortgage to Harlan and thereafter a second mortgage to Wexman.  Tyson defaulted on the first mortgage and allowed it to be foreclosed; and the property was pur-

---

[1] Other cases may be found in West's Arkansas Digest, "Estoppel," § 35, *et seq.*

chased by Harlan. When Tyson repurchased the property from Harlan this Court held that the reacquisition of title by Tyson served to reinstate the Wexman mortgage, and cited our "After-acquired Title" Statute as authority for such holding.

In *Sheppard* v. *Zeppa, supra,* in passing on the "After-acquired Title" Statute, we said concerning Mrs. Geneva Sheppard Miller:

"In other words, in the deed which she executed as guardian on behalf of Lowell Harrison Sheppard, she expressly warranted the title. Conceding that she, personally, had nothing at that time but a life estate, and irrespective of validity of the probate court proceedings, the fact remains that when she subsequently acquired the interest of Lowell Harrison Sheppard . . . such title as she had previously attempted to convey and warrant to Zeppa passed to him and to his grantees. Section 1798 of Pope's Digest. . . ."

From the above review it is evident that our cases have applied our "After-acquired Title" Statute to situations in all respects similar to that here presented, and such cases have become a rule of property. Because of such holdings there is no occasion to quote from cases from other jurisdictions; but even so, many States, having similar after-acquired title Statutes, hold to the same effect as do our cases. See the Annotation, "After-acquired title rule as applicable to title acquired by grantor through enforcement of mortgage or lien", in 168 A. L. R. 1149.

The decree of the Chancery Court is affirmed.

GEORGE ROSE SMITH, J., dissenting. It is easy to criticize the majority opinion on the ground that it is unjust. Ever since 1933 every party to this case has believed that the foreclosure decree completely extinguished the appellees' title to the disputed minerals. For seventeen years the appellees silently admitted by their inaction that they had no claim to the property. It is not even shown that the appellees knew that the land had been repurchased in 1935, much less that they were aware

that such a repurchase might have given them a toe hold for a claim under the after-acquired title statute. They do not say that during those seventeen years they paid one penny of the taxes assessed against this property or in any other way asserted a claim of ownership. It was not until they were named as defendants in this suit to quiet title that they suddenly realized that they had owned the property all along. In the meantime it was the appellants who believed themselves to be the owners—who sold these same minerals to others for value —who presumably paid whatever taxes were assessed.

My principal concern, however, is not with the fact that the appellants are being treated unfairly; for it must be conceded that in real property law the important goal is certainty. If a rule of property must be applied inflexibly to prevent ninety-nine men from losing title to their homes, it does not matter much that the rule is apparently unjust to the hundredth man. What bothers me now is that the majority decision not only produces an unjust result but actually creates uncertainty where it did not exist before.

For this case cannot be reconciled with *Lewis* v. *Bush,* which the majority cite but do not expressly overrule. There Bush gave a warranty deed to land which he had not yet paid for. When Bush's vendor foreclosed his outstanding lien, Bush bought at the sale. Bush's grantees excepted to the report of sale, asking that Bush be declared to hold the title as trustee for them. We sustained the grantees' contention, mentioning the after-acquired title statute only to show that Bush could be required to perform his warranty by specific restitution of the title that he bought at the foreclosure sale. We remanded the case with instructions to the chancellor "to require the appellee Bush to make good his warranty by conveying the lot in controversy to the appellants." Thus we held that the after-acquired title statute had not automatically vested title in Bush's grantees and that it was necessary for him to perform specifically his covenant of warranty by conveying the title acquired at the foreclosure sale.

Today's decision is wholly inconsistent with the *Bush* case. Under the earlier decision these appellees had only a cause of action for restitution when the appellants bought at the foreclosure sale in 1935. That cause of action is undeniably barred by their fifteen years of delay. The appellees can be saved only by saying that the appellants' title passed automatically in 1935 under the after-acquired title statute, but the *Bush* case holds that it did not. It follows that we now have conflicting cases as to this rule of property, and for that reason I dissent.

WARD and ROBINSON, JJ., join in this dissent.